## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Innocoll Holdings Public Limited Company Securities Litigation<br><br>CLASS ACTION<br><br><br>This Document Relates To:<br>All Actions | C.A. No. 2:17-cv-00341-GEKP<br><br>CLASS ACTION |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement (the "Stipulation"), dated November 24, 2021, is entered into among Lead Plaintiffs Russel Bleiler and Carl Bayney, on behalf of themselves and the Settlement Class ("Lead Plaintiffs" or "Plaintiffs"), and Defendants Innocoll Holdings Public Limited Company, Anthony P. Zook and Lesley Russell (collectively, "Defendants"), through their respective counsel of record, and embodies the terms and conditions of the settlement of the above-captioned litigation (the "Action"). This Stipulation is intended to fully, finally and forever resolve, discharge and settle with prejudice all claims asserted in this Action against Defendants subject to the approval of the United States District Court for the Eastern District of Pennsylvania (the "Court").

## I.      THE LITIGATION

### A.      Procedural History of the Litigation

This class action lawsuit has been brought on behalf of persons who purchased or otherwise acquired Innocoll securities from July 25, 2014 and December 29, 2016, both dates inclusive (the "Settlement Class Period") for alleged violations of §§ 10(b) and 20(a) of the Securities Exchange

119646683

Act of 1934.

The first action was commenced on January 24, 2017, styled *Anthony Peicelli  v. Innocoll Holdings Public Limited Company, et al*., Case No. 2:17-cv-00341-GEKP (E.D.Pa.), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (Dkt. No. 1). On February 16, 2017, a related action, styled *Jianmin Huang v. Innocoll Holdings Public Limited Company, et al*., Case No. 2:17-cv-00740-GEKP (E.D.Pa.), asserting violations of Sections 10(b) and 20(a) of the Exchange Act, was filed.

On March 27, 2017, Bleiler and Bayney, among others, moved for consolidation of the related actions, appointment as lead plaintiffs, and approval of lead counsel. (Dkt. No. 4). On April 25, 2017, the Court granted this motion, consolidating the actions, appointing Bleiler and Bayney, among others, as Lead Plaintiffs, and appointing The Rosen Law Firm, P.A. as Lead Counsel. (Dkt. N0. 18).

On May 25, 2017, Lead and Named Plaintiffs filed the Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (Dkt. No. 19). Defendants moved to dismiss and, after oral arguments, granted Defendants' motion on September 5, 2018, with leave to replead. (Dkt. No. 47).

Plaintiffs timely filed their Second Amended Complaint (Dkt. No. 48), and Defendants timely moved to dismiss. (Dkt. No. 50). After the motion was fully briefed, the Court granted the Parties' request to stay the case while they explored settlement. The discussions proved fruitless, and on March 10, 2020, the Court held oral arguments, and denied Defendants' motion to dismiss on April 7, 2020. (Dkt. No. 70).

The Parties began discovery. Defendants ultimately produced, and Plaintiffs reviewed, more than 400,000 pages of documents.  Plaintiffs also took a portion of a Rule 30(b)(6) deposition

of Innocoll. The Parties exchanged discovery correspondence throughout fact discovery, thereby resolving dozens of discovery disputes.

Class discovery began after Plaintiffs filed their motion for class certification on August 31, 2020. (Dkt. No. 80). Defendants deposed each Plaintiff. The Parties each served one opening and rebuttal expert report and deposed the other's expert.

The motion for class certification was fully briefed on December 18, 2020 (Dkt. No 96). On January 13, 2021, the Court issued an oral order, confirmed in writing the next day, vacating the motion for class certification, setting a deadline of February 3, 2021 to serve any additional expert reports, and ordered Plaintiffs to file a renewed motion for class certification on a date to be determined after February 3. (Dkt. No. 100). The Court also stayed deposition discovery on February 10, 2021, until a ruling on Plaintiffs' motion for class certification. (Dkt. No. 105). Pursuant to the briefing schedule, the renewed motion for class certification was fully briefed on April 6, 2021, at which time the Court granted Defendants' request for an evidentiary hearing on the renewed motion. (Dkt. No. 115). On May 19, 2021, the Court scheduled the evidentiary hearing and oral arguments for July 6, 2021. (Dkt. No. 118).

### Settlement Negotiations

The Parties held a mediation in August 2019. While the mediation did not bear fruit, the Parties continued to exchange settlement demands and offers at propitious times during the litigation. The exchange of demands and offers accelerated after the Court scheduled the evidentiary hearing and on June 27, 2021, the Parties agreed in principle to resolve the claims asserted in the Action for $2.755 million in return for a release of all claims against the Defendants, as further detailed below. The Parties promptly notified the Court.

### B.      Lead Plaintiffs' Assessment of the Claims and Benefits of Settlement

Lead Plaintiffs believe that the claims asserted in the Action, as reflected in Lead Plaintiffs'

investigation to date, have merit.  Additionally, Lead Counsel have researched the applicable law and believe that any defenses Defendants raise can be refuted. Nonetheless, Lead Plaintiffs and Lead Counsel recognize the expense and length of continued prosecution of the Action against Defendants through completion of discovery, trial, and any subsequent appeals.

Lead Plaintiffs and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Settlement Class, is fair, reasonable, adequate, and in the best interests of the Settlement Class.

### C.    Defendants' Denials of Wrongdoing and Liability

Defendants have denied and continue to deny each and all of the claims asserted in the Action and expressly deny, *inter alia*, that Defendants have engaged in any wrongdoing, including, without limitation, that their public statements were false or misleading; that they failed to disclose any material information to investors; that they acted in any deceitful manner or otherwise with the requisite scienter; and that any investment losses sustained by Lead Plaintiffs and the Settlement Class were caused by Defendants' alleged misconduct. Defendants believe that the Action is without merit, that their public statements during the Settlement Class Period contained no material misstatements or omissions, and that they otherwise complied with all applicable rules, regulations and laws.  In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action.

Nonetheless, taking into account the uncertainty and risks, expenses, length of time, and business distraction, among other things, inherent in any litigation, especially in complex cases such as this Action, Defendants have concluded that further litigation of the Action would be protracted, burdensome, and expensive, and that it is desirable and beneficial that the claims asserted in the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Stipulation.

119646683

## II.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

### A.   Introduction

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs (individually and on behalf of all members of the Settlement Class), and each of them, and Defendants, and each of them, by and through their respective undersigned counsel or attorneys of record, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Action and the Settled Claims shall be finally and fully compromised, settled and released, and the Action shall be dismissed with prejudice, as to all Parties, upon and subject to the terms and conditions of this Stipulation.

### B.   Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.0    "Action" means *In re Innocoll Holdings Public Limited Company Securities Litigation,* Case No. 2:17-cv-00341-GEKP (E.D. Pa.).

1.1    "Authorized Claimant" means any member of the Settlement Class who is a Claimant (as defined in ¶ 1.4) and whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2    "Bar Date" means the date of the Final Approval Hearing, as defined below.

1.3    "Business Day" means any day except a Saturday or Sunday or other day on which national banks are authorized by law or executive order to close in the Commonwealth of Pennsylvania.

1.4    "Claimant" means any Settlement Class Member (as defined in ¶ 1.39) who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.5     "Claims Administrator" means the firm of Strategic Claims Services, which shall administer the Settlement.

1.6     "Court" means the United States District Court for the Eastern District of Pennsylvania.

1.7     "Defendants" means Innocoll, Anthony P. Zook, and Lesley Russell.

1.8     "Defendants' Counsel" means the law firm of Dentons LLP.

1.9     "Effective Date" means the first date by which all of the events and conditions specified in ¶ 10.0 of the Stipulation have been met and have occurred.

1.10    "Escrow Account" means an account to hold the Settlement Fund.

1.11    "Escrow Agent" means Huntington National Bank.

1.12    "Exchange Act" means the Securities Exchange Act of 1934, as amended.

1.13    "Final" means: (1) the Court has entered a Judgment approving the Settlement in all material respects, including but not limited to, *inter alia,* (a) certifying a Settlement Class, (b) approving the scope of the Releases, and (c) ordering the Clerk of the Court to enter final judgment in the form set forth in Exhibit F pursuant to Federal Rule 54(b), finding that there is no just reason for delay of enforcement or appeal of the order: and (2) the time for taking an appeal from the Judgment has expired, no appeal is taken and the Judgment is no longer subject to further appeal or review; or an appeal or appeals from the Judgment is taken and all such appeals are dismissed prior to a ruling of the appellate court and the Judgment is no longer subject to further appeal or review; or the Judgment has been affirmed in all respects on any appeal or review and is no longer subject to further appeal or review.  Provided, however, and notwithstanding any provision to the contrary in this Settlement, "Final" shall not include (and the Settlement is expressly not conditioned upon) the Court's approval of attorneys' fees and the reimbursement of expenses

6

sought by Lead Counsel, or the approval of payment of a Compensatory Award for the time and expenses expended by Lead Plaintiffs, or any appeals solely related thereto.

1.14    "Individual Defendants" means Anthony P. Zook and Lesley Russell.

1.15    "Insurer" means the directors' and officers' liability insurers for the Defendants, and is inclusive of their respective reinsurers.

1.16    "Judgment" means the proposed final order and judgment to be entered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit F or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action.

1.17    "Lead Counsel" means The Rosen Law Firm, P.A.

1.18    "Lead Plaintiffs" mean Lead Plaintiffs Russel Bleiler and Carl Bayney.

1.19    "MOU" means the Memorandum of Understanding entered into on August 9, 2021 between Plaintiffs and Defendants.

1.20    "Notice" means collectively, the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing ("Long Notice"), the Summary Notice of Pendency and Proposed Class Action Settlement ("Publication Notice"), and the Postcard Notice, which are to be made available to Settlement Class Members substantially in the forms attached hereto as Exhibits B, C and D, respectively, on the Claims Administrator's website and/or mailed or emailed to Settlement Class Members.

1.21    "Notice and Administration Expenses" means the reasonable fees and expenses incurred by, and the reasonable fees charged by, the Claims Administrator in connection with the administration and notice of the settlement upon presentation of customary invoices therefor, which invoices have been approved by Lead Counsel, including, without limitation: the cost of

119646683

identifying and locating members of the Settlement Class, mailing Notice and Proof of Claim and publishing the Publication Notice (such amounts shall include, without limitation, the actual costs of publication in national newswires, printing and mailing the Notice, and reimbursement to nominee owners for forwarding notice to their beneficial owners), soliciting Settlement Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund (as defined below) to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims.

1.22    "Order of Preliminary Approval" means the order certifying the Settlement Class for settlement purposes only, preliminarily approving the Settlement, and authorizing notice thereof and related matters set forth as Exhibit A hereto.

1.23    "Parties" means Lead Plaintiffs and Defendants.

1.24    "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.25    "Plan of Allocation" means a plan or formula for allocating the Net Settlement Fund, as described in ¶ 7.5 below, to Authorized Claimants.  Any Plan of Allocation is not part of this Stipulation and Defendants shall have no responsibility or liability with respect thereto.

1.26    "Postcard Notice" means the postcard notice to be sent to Settlement Class Members substantially in the form attached hereto as Exhibit D, and which shall contain

information relating to, among other things, how to access the Long Notice, Stipulation, and file a Proof of Claim.

1.27   "Proof of Claim" means the Proof of Claim and Release Form to be submitted by Claimants, substantially in the form attached as Exhibit E.

1.28   "Publication Notice" means the Summary Notice of Pendency and Proposed Settlement of Action and Final Approval Hearing thereon to be published on a national business newswire, substantially in the form attached as Exhibit C.

1.29   "Releasing Parties" shall mean the: (1) Releasing Plaintiffs with respect to the Released Claims Against Defendants; and (2) Defendants with respect to the Released Claims Against Lead Plaintiffs.

1.30   "Released Parties" means the Defendant Releasees and the Lead Plaintiff Releasees.

(i)      "Defendant Releasees" shall mean Defendants, and Defendants' current or former parents, subsidiaries, affiliates, predecessors, successors, divisions, joint ventures, and general or limited partnerships, and each of their respective current or former officers, directors, trustees, partners, contractors, auditors, principals, agents, managing agents, employees, attorneys, accountants, investment bankers, underwriters, insurers or reinsurers in their capacities as such, as well as each of the immediate family members, heirs, executors, personal or legal representatives, estates, beneficiaries, predecessors, successors and assigns of the Defendants and other individuals referred to in this paragraph

(ii)     "Lead Plaintiff Releasees" shall mean Russel Bleiler and Carl Bayney, and/or their immediate family members, associates, affiliates, and each and all of their respective past, present employees, attorneys, accountants, insurers, co-insurers and reinsurers, heirs, executors, trustees,

general or limited partners or partnerships, limited liability companies, members, personal or legal representatives, estates, administrators, predecessors, successors and assigns or other individuals or entities in which either Lead Plaintiff has a controlling interest or which is related to or affiliated with any Lead Plaintiff.

1.31    "Released Claims" means Released Claims Against Defendants and Released Claims Against Lead Plaintiffs.

1.32    "Released Claims Against Defendants" means any and all claims (including without limitation Unknown Claims as defined in ¶ 1.42), demands, rights, causes of action and liabilities, of every nature and description whatsoever, whether based in law or equity, arising under federal, state, local, statutory or common law, or any other law, rule or regulation, including both known and unknown claims with respect to the purchase or sales of Innocoll securities during the Class Period: (1) relating to the purchase, sale, or holding of securities during the Settlement Class Period <u>and</u> <u>either</u> (a) relating in any way to the allegations of the Complaint or Amended Complaint or Second Amended Complaint or otherwise asserted in the Action; or (b) that the Releasing Plaintiffs have asserted, could have asserted, or could assert in the future, in any forum, that are based upon, arise out of, or relate in any way to the facts, matters, transactions, allegations, claims, losses, damages, disclosures, filings, events, representations, or statements that are set forth in the Complaint or Amended Complaint or Second Amended Complaint or that are otherwise at issue in the Action. Released Claims Against Defendants shall not include claims relating to the enforcement of the MOU or this Stipulation.

1.33    "Released Claims Against Lead Plaintiffs" means all claims (including "Unknown Claims" as defined in ¶ 1.42), rights, demands, suits, matters, issues, liabilities, or causes of action, in law or in equity, of every nature and description whatsoever, under federal, state, local, foreign

law, or any other law, rule, or regulation, whether known or unknown, that arise out of or relate in any way to the institution, prosecution, or settlement of claims against the Defendants, including under Rule 11 of the Federal Rules of Civil Procedure.  Released Claims Against Lead Plaintiffs shall not include claims relating to the enforcement of the MOU or this Stipulation.

1.34    "Releasing Plaintiffs" shall mean the Lead Plaintiffs, the Lead Plaintiff Releasees, the Settlement Class, all Settlement Class Members, and the successors and assigns of Lead Plaintiffs and of all Settlement Class Members, in any capacity.

1.35    "Settled Claims" means all of the Released Claims.

1.36    "Settlement" means the settlement contemplated by this Stipulation.

1.37    "Settlement Amount" means Two Million Seven Hundred Fifty-Five Thousand Dollars ($2,755,000).

1.38    "Settlement Class" means all persons and entities who purchased or otherwise acquired Innocoll securities between July 25, 2014, and December 29, 2016, both dates inclusive ("Settlement Class Period"), and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of Innocoll, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Individual Defendants have or had a controlling interest.

1.39    "Settlement Class Member" means any person or entity that falls within the definition of the Settlement Class as set forth in ¶ 1.38.

1.40    "Settlement Class Period" means the period from July 25, 2014 to December 29, 2016, both dates inclusive.

1.41    "Settlement Fund" means an interest-bearing escrow account established by the Escrow Agent to receive the amounts of funds payable by ¶ 2.0.

1.42    "Unknown Claims" shall collectively mean all claims, demands, rights, liabilities, and causes of action of every nature and description which any Releasing Plaintiff (including the Lead Plaintiffs and any Settlement Class Member) does not know or suspect to exist in his, her or its favor at the time of the release of the Defendant Releasees which, if known by him, her or it, might have affected his, her or its settlement with and release of the Defendant Releasees, or might have affected his, her or its decision not to object to this Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Releasing Parties shall expressly waive, and by operation of the Judgment shall have waived, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Releasing Parties shall expressly waive, and by operation of the Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542.  The Releasing Parties may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Releasing Parties shall expressly, fully, finally and forever settle and release and upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard

to the subsequent discovery or existence of such different or additional facts.  Releasing Parties acknowledge, and the Releasing Plaintiffs (including all Settlement Class Members) shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

C.     **The Settlement**

a.     **The Settlement Consideration**

2.0     In consideration of the full and final settlement of all claims asserted or which could have been asserted against Defendants in this Action, Defendants shall cause to be paid to the Class, the Settlement Amount as follows:

(a)     Within twenty-one (21) calendar days after the later of (i) entry of an order granting preliminary approval of the Settlement, and (ii) Defendants' Counsel's receipt of a W-9, complete wire and transfer instructions for the Escrow Account, and contact name and telephone number of the Escrow Agent to confirm payment, Defendants and/or their Insurer shall wire to the Escrow Agent $2,755,000 (Two Million Seven Hundred Fifty-Five Thousand Dollars) to be deposited into the Settlement Fund.

b.     **The Escrow Agent**

2.1     The Settlement Amount shall be invested exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Escrow Agent shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Amount by the Escrow Agent.

119646683

### c.       Return of Funds in Certain Circumstances

2.2      The Settlement Amount shall include all attorneys' fees, administration costs, notice costs, expenses, class member benefits, as well as any other costs, expenses, or fees of any kind whatsoever associated with the resolution of the Action.   The interest from the Escrow Account will accrue to the benefit of the Settlement Class if the Court approves the Settlement including the resolution of any appeals taken from the Court's final approval.   If the Court does not approve the Settlement or the approval is reversed or vacated on any appeal, the Settlement Amount and interest thereon will be returned to Defendants and/or the Insurer who paid the Settlement Amount less any amount used to provide notice of the Settlement to the Settlement Class.   The Settlement is not a claims made settlement. Once the Settlement is final and the time for any appeal has expired or the Settlement has been affirmed on appeal, there will be no reversion of any portion of the Settlement Amount to Defendants and/or the Insurers.

### d.       Handling and Disbursement of Funds by the Escrow Agent

2.3      No monies will be disbursed from the Settlement Fund until after the Effective Date except:

(a)      As provided in ¶ 2.9, as regards Taxes, and ¶ 8.1, as regards attorneys' fees and expenses; and

(b)      To pay Taxes and Tax Expenses (as defined in ¶ 2.9(c)) on the income earned by the Settlement Fund.   Taxes and Tax Expenses shall be paid out of the Settlement Fund, shall be considered to be a cost of administration of the Settlement, and shall be timely paid by the Escrow Agent without prior order of the Court.

2.4     The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of Defendants' Counsel and Lead Counsel.

2.5     Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class as are consistent with the terms of this Stipulation.

2.6     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned to the parties who deposited such funds pursuant to this Stipulation and/or further order(s) of the Court.

2.7     The Settlement Fund shall be used by the Escrow Agent to pay Notice and Administration Expenses. Notwithstanding that the Effective Date has not yet occurred, Plaintiffs' Counsel may authorize the Escrow Agent to pay from the Escrow Account the actual costs of Notice and Administration Expenses (not including any attorney fees) up to $250,000 without further order of the Court. It is understood that, subject to court approval, class Notice and Administration Expenses shall be paid solely from the Escrow Account.  Defendants shall not bear any cost or responsibility for class notice and administration expenses, except that Defendants shall pay the costs of providing Innocoll's transfer records and notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA"), if any.  If the Settlement is not consummated, money reasonably paid or incurred for this purpose, including any related fees, shall not be repaid or returned.

2.8     No later than ten (10) calendar days following the filing of this Stipulation with the Court, Innocoll shall serve on behalf of all Defendants the notice required under CAFA. At least

seven (7) calendar days before the Settlement Hearing, Innocoll shall cause to be served on Lead Counsel and filed with the Court an affidavit or declaration regarding compliance with the CAFA notice requirements.

### e.   Taxes

2.9

(a)   The Parties and the Escrow Agent agree to treat the Settlement Funds as "qualified settlement funds" within the meaning of Treasury Regulation §1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.9, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)   The Claims Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treasury Regulation §1.468B-2(k)).  Such returns (as well as the election described in ¶ 2.9(a)) shall be consistent with this ¶ 2.9 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties on the income earned) shall be paid out of the Settlement Fund.

(c)   All Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, and expenses and costs incurred in connection with the operation and implementation of this ¶ 2.9 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses or penalties relating

16

to filing (or failing to file) the returns described in this ¶ 2.9) ("Tax Expenses"), shall be paid out of the Settlement Fund.

(d)     Defendants, Defendants' Counsel, Lead Plaintiffs, and Lead Counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  Taxes and Tax Expenses shall be treated as, and considered to be, a Notice and Administration Expense, and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court.

(e)     The Escrow Agent shall indemnify and hold each of the Defendants, Defendants' Counsel, Lead Plaintiffs and Lead Counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).

(f)     The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-2(l)(2)).   Neither Defendants, Defendants' Counsel, Lead Plaintiffs, nor Lead Counsel are responsible therefor, nor shall they have any liability with respect thereto.

(g)     The Parties agree to cooperate with the Escrow Agent, each other, and any involved tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 2.9.  Upon written request, Defendants will promptly provide the Escrow Agent with the statement described in Treasury Regulation §1.468B-3(e).

### f.     Termination of Settlement

2.10     The Defendants shall, acting collectively, have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so to all other Parties within ten (10) Business Days of: (a) the Court's denial of Lead Plaintiffs' motion for preliminary

119646683

approval of the Settlement in any material respect without leave to amend and resubmit; (b) the Court's refusal to approve this Stipulation or any material part of it without leave to amend and resubmit; (c) the Court's declining to enter an Order and Final Judgment in any material respect without leave to amend and resubmit; or (d) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court. Any decision with respect to any Fee and Expense Application, or with respect to any Plan of Allocation, shall not be considered material to this Stipulation and shall not be grounds for termination.

2.11    If this Stipulation is terminated, the Settlement Amount including any interest accrued thereon, less expenses actually incurred or due and owing from the Settlement Fund for the Notice and Administration Costs pursuant to ¶ 2.7 above, shall be refunded by check or wire transfer in accordance with the instructions to be provided by Defendants' Counsel.

2.12    Lead Plaintiffs shall have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so to all other Parties within ten (10) days of: (a) the Court's denial of Lead Plaintiffs' motion for preliminary approval of the Settlement in any material respect as to the Defendants without leave to amend and resubmit; (b) the Court's refusal to approve this Stipulation or any material part of it without leave to amend and resubmit; (c) the Court's declining to enter an Order and Final Judgment in any material respect as to the Defendants without leave to amend and resubmit; (d) the Defendants' failure to timely make full payment of the Settlement Amount into the Escrow Account; or (e) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court. Any decision with respect to any Fee and Expense Application, or with respect to any Plan

of Allocation, shall not be considered material to this Stipulation and shall not be grounds for termination.

2.13    If the Settlement Amount is not paid into the Escrow Account in accordance with ¶ 2.0 of this Stipulation, then Plaintiffs, on behalf of the Settlement Class, and not Settling Defendants, shall have the right to (a) terminate the Settlement and Stipulation by providing written notice to the Settling Defendants at any time prior to the Court's entry of the Final Judgment; or (b) enforce the terms of the Settlement and this Stipulation and seek a judgment effecting the terms herein.

2.14    If, prior to the Final Approval Hearing, any persons who otherwise would be members of the Settlement Class have timely filed for exclusion from the Settlement Class in accordance with the provisions of the Order for Preliminary Approval and the notice given pursuant thereto  and such persons in the aggregate purchased a number of shares of Innocoll securities during the Settlement Class Period in an amount greater than the sum specified in a separate "Supplemental Agreement" between the Parties, Defendants, in their sole discretion, shall have the option to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement.  The Supplemental Agreement shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until a dispute among the Parties concerning its interpretation or application arises.  If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, Lead Plaintiffs and the Defendants will undertake to have the Supplemental Agreement submitted to the Court *in camera*.  Copies of all requests for exclusion received and copies of all written revocations of requests for exclusion received shall be sent to counsel for the Parties within

19

a reasonable time of receipt by the Claims Administrator, and in any event not less than fourteen (14) days prior to the Final Approval Hearing.

2.15    If: (i) the Defendants exercise their right to terminate the Settlement as provided in this Stipulation; (ii) Lead Plaintiffs exercise their right to terminate this Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur with respect to the Defendants, then:

(a)      The Settlement and the relevant portions of this Stipulation shall be canceled and terminated without prejudice, and this Stipulation shall be null and void and shall have no further force or effect; and

(b)      Lead Plaintiffs and Defendants shall revert to their respective positions in the Action on June 27, 2021.

**D.    Class Certification**

3.0     The Parties hereby stipulate to certification of the Settlement Class, appointment of Lead Plaintiffs as Class Representatives, and appointment of Lead Counsel as Class Counsel, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, solely for purposes of this Settlement.  The certification of the Settlement Class shall be binding only with respect to the Settlement and only if the Judgment becomes Final. If the Court does not approve the Settlement for any reason, Defendants reserve the right to oppose class certification of any plaintiff in any future proceedings.

**E.    Preliminary Approval Order**

4.0     Promptly after execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall request entry of an Order of Preliminary Approval (substantially in the form of Exhibit A) that will, *inter alia*, grant preliminary approval to the Settlement; certify the Settlement Class; and authorize notification of the Settlement Class

20

substantially in the form of Exhibits B, C and D hereto, along with provision of a Proof of Claim substantially in the form of Exhibit E.

4.1     The Long Notice shall describe the Settlement; the proposed Plan of Allocation; the requests for awards of Attorneys' Fees and Expenses and Lead Plaintiffs' Compensatory Awards (consistent with ¶¶ 8.0 and 9.0); the date of the Final Approval Hearing; Settlement Class Members' rights to opt out, object or otherwise be heard with regard to these matters; and Settlement Class Members' opportunity to file claims upon the Settlement Fund.

4.2     No later than seven (7) business Days after entry of the Preliminary Approval Order, Innocoll shall obtain from its transfer agent, at Innocoll's expense, a list of certificate or record holders who may have purchased shares of Innocoll securities between July 25, 2014 through December 29, 2016, inclusive of those dates. Innocoll shall provide and/or cause its transfer agent to provide, to Lead Counsel a list of the record owners of Innocoll securities during the Class Period in a usable electronic format, such as an Excel spreadsheet.  This information will be kept confidential and not used for any purpose other than to provide the notice.

4.3     The Stipulation of Settlement, Notice, Proof of Claim, and all papers submitted in support thereof shall be posted on a website to be maintained by the Claims Administrator.

**F.     <u>Releases</u>**

5.0     The obligations incurred pursuant to this Stipulation shall be a full and final disposition of the Action.

5.1     Upon the Effective Date, the Releasing Plaintiffs shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, dismissed with prejudice, and discharged all Released Claims against Defendants and each of the Defendant Releasees, whether or not any individual Settlement Class Member executes and delivers the Proof of Claim.

119646683

5.2     Upon the Effective Date, Defendants, and each of them, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims Against Lead Plaintiffs, the Lead Plaintiff Releasees, Settlement Class Members, and Lead Counsel.

**G.     Proofs of Claim**

6.0     Only those Class Members filing a valid and timely Proof of Claim shall be entitled to participate in the Settlement and receive a distribution from the Settlement Fund.  The Proof of Claim to be executed by Settlement Class Members shall release all Settled Claims against the Released Parties and shall be substantially in the form contained in Exhibit E attached hereto.

6.1     Such Proofs of Claim shall be filed thirty (30) days from the date of the Final Approval Hearing, unless otherwise ordered by the Court.

6.2     All Settlement Class Members not submitting valid and timely requests for exclusion shall be bound by the Releases, whether or not they submit a valid and timely Proof of Claim.

**H.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

7.0     The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants.  The distribution checks will be drawn upon the Settlement Fund.

7.1     Defendants shall have no responsibility or liability for the allocation of the Settlement Fund among the Settlement Class Members or the allocation of any awards of Lead Plaintiffs' attorneys' fees, costs and expenses.  Any such awards shall be paid solely by the Settlement Fund.

7.2     The Settlement Fund shall be applied as follows:

(i)      To pay the Taxes and Tax Expenses described in ¶ 2.8 above;

(ii)     To pay all the costs and expenses reasonably and actually incurred in connection with settlement administration, including, but not limited to, locating Settlement Class Members, providing Notice, soliciting Settlement Class claims, assisting with the filing of claims, processing Proof of Claims, making administrative determinations concerning the acceptance or rejection of submitted claims, administering and distributing the Settlement Fund to Authorized Claimants, paying escrow fees and costs, if any, and paying the fees and expenses of the Claims Administrator;

(iii)    To pay Lead Counsel's attorneys' fees and expenses, as provided in ¶ 8.1 (the "Fee and Expense Award"), to the extent allowed by the Court;

(iv)     To pay Compensatory Awards to the Lead Plaintiffs as provided in ¶ 9, to the extent allowed by the Court;

(v)      To pay the Claims Administrator's fees and expenses reasonably incurred in the claims administration of the Settlement; and

(vi)     Upon court approval, to distribute the balance of the Settlement Fund, that is, the total Settlement Fund less the items set forth in ¶¶ 7.2(i), (ii), (iii), (iv) and (v) (the "Net Settlement Fund"), to the Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

7.3      Upon the entry of the Judgment and thereafter, subject to ¶ 2.3 and in accordance with the terms of the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants subject to and in accordance with the following:

(i)      Each Settlement Class Member claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit E hereto, signed under penalty of perjury and supported by such documents as specified in the Proof of Claim or such other documents or proof, as are reasonably available to the Authorized Claimant, as Lead Counsel, in their discretion, may deem acceptable;

(ii)     Payment pursuant to the Court's approval of the Plan of Allocation or a plan of allocation shall be final and conclusive on all Settlement Class Members.  Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Proof of Claim by the Bar Date, or such other period as may be ordered by the Court, or otherwise allowed, or who file a Proof of Claim that is rejected, shall be forever barred from receiving any payments pursuant to this Stipulation and Settlement, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment and will be barred and enjoined from bringing any action against the Released Parties concerning the Settled Claims.

7.4      Claim Forms shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the plan of allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to paragraph 7.6 below as necessary.

7.5      Claim Forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.  The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be

rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of the following paragraph.

7.6      If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within ten (10) days after the date of mailing of the notice required in the preceding paragraph or such other time as may be provided in the preliminary approval order of the Court, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

7.7      Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

7.8      No Person  shall have any claim against Lead Plaintiffs, Lead Counsel, Defendants, Defendants' Counsel, the Claims Administrator, the Escrow Agent or any other agent designated by Lead Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

7.9      The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved

by the Court.  However, if there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), the Claims Administrator under the supervision of Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any balance that still remains in the Net Settlement Fund shall be donated to the Howard University Investor Justice and Education Clinic.

7.10    This is not a claims-made settlement and, if all conditions of the Stipulation are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned to the Defendants or the Insurers who paid the Settlement Amount.

7.11    Defendants and Defendant Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

7.12    It is understood and agreed by the Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation, and any order or proceedings relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth therein, or any other orders entered pursuant to this Stipulation. Lead Plaintiffs and Lead Counsel many not cancel or terminate the Settlement or this Stipulation based on any ruling by the Court or any appellate court with respect to the Plan of Allocation or any other plan of allocation in this Action.

I.     **Attorneys' Fees and Expenses**

8.0     Lead Counsel may submit an application or applications (the "Fee and Expense Application") for payments to Lead Counsel from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) reimbursement of actual costs and expenses, including experts or consultants, incurred in connection with prosecuting the Action as may be awarded by the Court. Lead Counsel reserves the right to make additional applications for fees and expenses incurred, if necessary.

8.1     Any award of attorneys' fees, costs, and expenses approved by the Court  shall be payable to Lead Counsel, for distribution by Lead Counsel in its sole discretion among itself, solely from the Settlement Fund no later than five (5) Business Days of final approval of the Settlement and the Court's entry of an order awarding fees and expenses ("Fee and Expense Award"), notwithstanding any appeals that may be taken.  Should an appellate court later reverse the Court's final approval of the Settlement, Lead Counsel shall be jointly and severally obligated to repay all such attorney's fees and expenses awarded. If the Settlement is terminated or if, as a result of any appeal or further proceedings, the Fee and Expense Award is reduced or reversed, Lead Counsel shall repay fees and expenses accordingly, including accrued interest at the same net rate as is earned by the Settlement Fund.

8.2     Lead Counsel further agrees to refund to the Settlement Fund any award of attorney's fees and expenses by the Court paid to Lead Counsel in the event that this Settlement does not become Final; in such situation, payment of all of the Fee Award shall be made by Lead Counsel into the Settlement Fund within ten (10) days thereof, and shall thereafter be distributed by the Escrow Agent pursuant to the terms of ¶ 10.3.

8.3     If the Fee and Expense Award is reduced or reversed on appeal, Lead Counsel shall make all necessary refunds and repayments into the Settlement Fund no later than fifteen (15)

calendar days after any order that reverses or reduces any award of attorneys' fees or expenses, which shall be distributed by the Escrow Agent to the Settlement Class pursuant to the manner directed in the Final order.

8.4     The procedure for and allowance or disallowance by the Court of any application by Lead Counsel for attorneys' fees and expenses, including the fees and expenses of experts and consultants, to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Stipulation and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation. Any order or proceedings relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to modify, terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Action.

8.5     Defendants and the Defendant Releasees shall have no responsibility for, and no liability whatsoever with respect to, the Fee and Expense Award or for any payment to Lead Counsel and/or any other Person who receives payment from the Settlement Fund.

8.6     Defendants and the Defendant Releasees shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Lead Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

**J.     Lead Plaintiffs' Compensatory Award**

9.0     Lead Counsel may submit an application to the Court to authorize the payment of a Compensatory Award from the Settlement Fund for the time and expenses expended by the Lead Plaintiffs in assisting Lead Counsel in the litigation of this Action.  Subject to the payment terms in ¶ 2.0, payment for any Compensatory Award payable in cash shall be payable to the Lead

Plaintiffs five (5) days after the Effective Date.  Defendants and the Defendant Releasees shall have no responsibility for, and no liability whatsoever with respect to, any such Compensatory Award.

### K.  Effect of Disapproval, Cancellation or Termination

10.0    The Effective Date of the Stipulation shall be conditioned upon the occurrence of all of the following events:

(a)    Defendants have caused the contributions to be made to the Settlement Fund, as required by ¶ 2.0 above;

(b)    the Court has entered the Judgment, or a judgment substantially in the form of Exhibit F attached hereto; and

(c)    the Judgment has become Final, as defined in ¶ 1.13 hereof.

Any appeal or delay in (a) the approval of the Plan of Allocation, (b) the determination of the Fee and Expense Award, or (c) the granting of a Compensatory Award to Lead Plaintiffs, shall not affect, alter, or delay the occurrence of the Effective Date.

10.1    Upon the occurrence of the Effective Date, any and all interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, except as set forth in this Stipulation.  The Settlement Fund shall be distributed in accordance with ¶ 7.2 hereof.

10.2    In the event that this Stipulation is not approved by the Court, or the Effective Date does not occur, then this Stipulation shall be canceled and terminated subject to ¶ 10.3 unless Lead Counsel and Defendants' Counsel mutually agree in writing to proceed with this Stipulation.  None of the Parties, or any of them, shall have any obligation whatsoever to proceed under any terms other than provided for and agreed herein. Without limitation of any Party's other rights or remedies at law or in equity to enforce its rights against any other Party that breaches its obligations

under this Stipulation, no breach by any Party of its obligations under this Stipulation shall permit any other Party to terminate this Stipulation or, after the Effective Date, affect or impair the disposition of the Action or release of claims contemplated by Section 5 of this Stipulation.

10.3    Unless otherwise ordered by the Court, in the event the Stipulation is terminated, or is canceled, or shall not become effective for any reason, within ten (10) Business Days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, subject to the terms of ¶ 2.10 hereof, the Settlement Fund (including accrued interest), less any expenses and any costs which have either been properly disbursed pursuant to ¶¶ 2.3-2.7 hereof, or are determined to be chargeable to the Settlement Fund pursuant to ¶ 2.9 hereof, shall be refunded by the Escrow Agent to the Insurer, in proportion to their contribution to the Settlement Fund, plus accrued interest attributable to that amount by check or wire transfer pursuant to written instructions from the Insurers.  At the request of the Insurer, the Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund, to the Insurer.

10.4    If the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become final in accordance with its terms, the Parties shall be restored to their respective positions in the Action immediately prior to the execution of this Stipulation.  Then, the terms and provisions of the Stipulation, with the exception of ¶¶ 1.0-1.36 (as applicable and relating to termination of the Stipulation) and  ¶¶ 10.2-10.5 hereof, shall have no further force and effect and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or

reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses and interest awarded by the Court to Lead Counsel shall constitute grounds for cancellation or termination of the Stipulation.

10.5    If the Effective Date does not occur, neither Lead Plaintiffs nor Lead Counsel shall have any obligation to repay any Notice and Administration Expenses actually and properly disbursed from the Settlement Fund.  In addition, any Notice and Administration Expenses already incurred and properly chargeable to the  Settlement pursuant to this Stipulation at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶ 10.3.

L.    **Miscellaneous Provisions**

11.0    This Stipulation (whether or not consummated), and all related documents including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation approved by the Court), the negotiations leading to the execution of this Stipulation, and or the approval of the Settlement (including any arguments proffered in connection therewith): (a) shall not be construed as or deemed to be evidence of (i) any presumption, admission or concession on the part of any Defendant, Defendants' Counsel, Insurer, or any of Defendant Releasees (as defined in ¶ 1.30(i)), with respect to any claim of any fact alleged by Lead Plaintiffs or any Settlement Class Member, the validity of any claim that was or could have been asserted by Lead Plaintiffs or any Settlement Class Member, or any deficiency of any defense that has been or could have been asserted by the Defendants in this Action or in any other litigation, or (ii) any deception, negligence, fault, liability, wrongdoing, or damage whatsoever and of any kind of any Defendant or any of the Defendant Releasees or in any way referred to for any other reason as against any Defendant or any of the Defendant Releasees, in any civil, criminal, or administrative action or

31

proceeding; and  (b) shall not be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; and (c) shall not be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; (c) *provided, however*, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.  The Parties, and each of them, shall not assert or pursue any action, claim or rights that any party hereto violated any provision of Rule 11 of the Federal Rules of Civil Procedure.  Further, the Parties, and each of them, will not deny in any statement made to any media representative that the Action is being settled voluntarily after consultation with competent counsel.  The Parties, and each of them, and their respective counsel agree that the Action was resolved in good faith, following arm's length bargaining.

11.1     The Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this

Stipulation. Lead Counsel and Defendants' Counsel agree to cooperate with one another in seeking Court approval of the Order of Preliminary Approval, the Stipulation and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement.

11.2    The Parties intend this Stipulation to be a final and complete resolution of all disputes between them with respect to the Action as well as any disputes which could have been raised in the Action by Lead Plaintiffs, the Settlement Class, and the Releasing Plaintiffs, and each or any of them, against Defendants and Defendant Releasees, Defendants' Counsel, and each or any of them, on the one hand, and by Defendants and each or any of them, against Lead Plaintiffs and the Lead Plaintiff Releasees, and each or any of them, on the other hand.  Additionally, as among and between Defendants and Defendant Releasees, and each or any of them, Defendants intend this Stipulation to be a final and complete resolution of all disputes between them with respect to the Action.  Accordingly, the Parties agree not to assert in any forum or, in any statement made to any media representative (whether or not for attribution) that the Action was brought by Lead Plaintiffs or defended by any the Defendants, or each or any of them, in bad faith or without a reasonable basis. The Judgment will contain a statement that during the course of the Action, the parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure. The Parties further agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

11.3     Except as otherwise provided herein, all agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

11.4     The Settlement contemplated herein is not subject to or contingent upon confirmatory discovery or other discovery.

11.5     The MOU executed by the Parties shall remain confidential after this Stipulation is filed with the Court. Upon the execution of the Stipulation, the Stipulation will supersede the MOU.

11.6     Whether or not the Effective Date occurs or this Stipulation is terminated, neither this Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement:

(i)       may be deemed, or shall be used, offered or received against any of the Defendants or Defendant Releasees, or each or any of them, as an admission, concession or evidence of, the validity of any of the Released Claims Against Defendants, the truth of any fact alleged by Lead Plaintiffs, the deficiency of any defense that has been or could have been asserted in the litigation, or of any alleged wrongdoing, liability, negligence, or fault of any of the Defendants and Defendant Releasees;

(ii)      may be deemed, or shall be used, offered or received against any of Lead Plaintiffs, the Settlement Class, Lead Plaintiff Releasees, as an admission, concession or evidence of, the validity or invalidity of any of the Released Claims Against Lead Plaintiffs, the infirmity or strength of any claims raised in the Action, the truth or falsity of any fact alleged by Defendants, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

If this Stipulation is approved by the Court, any party or any of the Released Parties may

file this Stipulation and/or Judgment in any action that may be brought against such party or parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

11.7    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

11.8    The waiver by one party of any breach of this Stipulation by any other party shall not be deemed as a waiver of any other prior or subsequent breaches of this Stipulation.

11.9    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

11.10   This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

11.11   This Stipulation and the Exhibits attached hereto constitute the entire agreement among the Parties hereto and no representations, warranties or inducements have been made to any party concerning this Stipulation or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. Except as otherwise provided herein, each Party shall bear its own costs.

11.12   Each counsel or other Person executing this Stipulation, any of its Exhibits, or any related settlement documents on behalf of any party hereto hereby warrants and represents that such Person has the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

11.13   This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Stipulation all exchange original signed counterparts.

11.14   This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto and the Released Parties and the Releasing Plaintiffs.

11.15   The Parties acknowledge that the Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation and submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

11.16   This Stipulation and the Exhibits thereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the Commonwealth of Pennsylvania and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the Commonwealth of Pennsylvania without giving effect to that State's choice of law principles.

11.17   This Stipulation is deemed to have been prepared by counsel for all parties, as a result of arm's length negotiations among the parties. Whereas all parties have contributed substantially and materially to the preparation of this Stipulation, it shall not be construed more strictly against one party than another.

11.18   Whenever this Stipulation requires or contemplates that a Party shall or may give notice to the other, notice shall be provided by  electronic mail, or next-day (excluding Saturday and Sunday) express delivery service as follows and shall be deemed effective upon such transmission or delivery to the address set forth below:

If to Lead Plaintiffs, then to:                    Jonathan Horne
                                                   **THE ROSEN LAW FIRM, P.A.**
                                                   275 Madison Avenue, 40th Floor
                                                   New York, NY 10016

36

jhorne@rosenlegal.com

If to Defendants, then to:      Kenneth J. Pfaehler
**DENTONS US LLP**
1900 K Street, N.W.
Washington, D.C. 20006
kenneth.pfaehler@dentons.com

11.19   All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Stipulation or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

11.20   The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, dated November 24, 2021.

**THE ROSEN LAW FIRM, P.A.**

/s/   Jonathan Horne_____
Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046 Telephone:

Jonathan Horne
**ROSEN LAW FIRM**
275 Madison Avenue, 40th floor
New York, NY 10016

119646683

*Lead Counsel for Plaintiffs*

**DENTONS US LLP**

/s/   **Kenneth J. Pfaehler**
     Kenneth J. Pfaehler
     Drew Marrocco
     Leanna M. Anderson
     Nicholas W. Petts
     Rajesh Charles Noronha
     1900 K Street, N.W.
     Washington, D.C. 20006
     Telephone: (202) 408-6468
     Facsimile: (202) 408-6399
     kenneth.pfaehler@dentons.com
     drew.marrocco@dentons.com
     nick.petts@dentons.com
     rajesh.noronha@dentons.com

*Counsel for Defendants Innocoll Holdings*
*Public Limited Company, Anthony P. Zook*
*and Dr. Lesley Russell*

119646683