IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE INNOCOLL HOLDINGS PUBLIC LTD. CO. SEC. LITIG. | : : : : : : | CIVIL ACTION<br><br>No. 17-341 |

## MEMORANDUM

PRATTER, J.                                                                                                                               MARCH 10, 2022

Shareholders sued Innocoll Holdings Limited, a pharmaceutical company, claiming that, in violation of the Securities and Exchange Act of 1934, Innocoll misrepresented its new product's chances of success in the FDA approval process. The parties have now negotiated a settlement, and the named plaintiffs request that the Court certify a settlement class and preliminarily approve the settlement agreement. Because the proposed settlement appears fair, reasonable, and equitable, the Court grants their requests.

### BACKGROUND

Innocoll, a pharmaceutical company that specializes in collagen technologies, went public in July 2014. That month, it announced that it would begin clinical trials for XaraColl, a collagen implant that contains pain medicine and is placed in surgical sites to relieve post-surgery pain. Two years later, Innocoll announced the results of the clinical trials and said that it planned to file a new drug application with the FDA. Innocoll filed that application but, nearly two months later, issued a press release explaining that the FDA had refused to accept the application for XaraColl. Innocoll had tested and submitted XaraColl as a drug, but the FDA claimed XaraColl should have been tested and submitted as a drug/device combination. The day after this announcement, the Innocoll share price plummeted by 61%.

Shareholders sued Innocoll, its CEO, and its Chief Medical Officer for violations of the Securities Exchange Act of 1934, claiming that they had misled investors who relied on the company's positive statements about the product and its chances of FDA approval. The first complaint was dismissed, but upon the filing of the amended complaint, the parties proceeded to discovery. Midway through extensive discovery, the shareholders moved for class certification. Just before the certification hearing, the parties announced that they had negotiated a settlement: Innocoll will pay $2.755 million to shareholders, and in exchange, the shareholders will release all claims against Innocoll that arise out of the alleged misrepresentations.

Based on this settlement, the lead plaintiffs, through counsel, have filed an unopposed motion for certification of the settlement class, preliminary approval of the settlement, and approval of the proposed notice. Having held a hearing on the motions, the Court grants them all.

## LEGAL STANDARDS

Class actions "may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). Before approving of a class settlement, courts must follow a two-step process. First, the court holds a preliminary approval hearing. If the court had not previously certified a litigation class, the court must decide whether to preliminarily certify the proposed settlement class. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995). The court must also assess the settlement itself and the plan for notifying class members of it. *See id.* at 804–05. In doing so, the court looks out for "any obvious problems." *Leap v. Yoshida*, No. 14-cv-3650, 2015 WL 619908, at *2 (E.D. Pa. Feb. 12, 2015). Once the class members have been notified and given a chance to file claims or opt-out of the class and settlement deal, the court holds a final approval hearing. There, class members may voice objections, and the court will consider several

2

additional factors in deciding whether to grant final approval to the settlement. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

## DISCUSSION

### I. The Court preliminarily certifies the settlement class

To have a class settlement, there must first be a class. *In re Gen. Motors*, 55 F.3d at 800. The proposed class must be ascertainable, such that the class members can be clearly identified. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). The proposed class must also satisfy the four prerequisites: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). And the proposed class must fit within one of the three types of permitted classes. *Id.* 23(b). All three requirements are met here.

#### A. The settlement class is ascertainable

The proposed settlement class consists of all investors, excluding Innocoll directors and officers, who purchased or acquired Innocoll stock between July 25, 2014 (the date of the IPO) and December 29, 2016 (the date that Innocoll announced that the FDA rejected its application) "and were damaged thereby." Doc. No. 121-2, Stipulation of Settlement ¶ 1.38. These are "objective" and "administratively feasible" criteria for deciding who is in the class and who is not. *Byrd*, 784 F.3d at 163. Thus, the class is ascertainable.

#### B. The settlement class satisfies all the prerequisites

The proposed class also meets Rule 23's prerequisites. First, the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Innocoll is a nationally traded company, with thousands of shareholders during the relevant time period. Not all of those shareholders could practically join this suit as individuals, nor could they reasonably, efficiently, and economically mount their own individual suits. *See In re Loewen Grp. Inc. Secs. Litig.*, 233 F.R.D. 154, 162 (E.D. Pa. 2005).

3

Second, the class shares "common" "questions of law or fact." Fed. R. Civ. P. 23(a)(2). What did Innocoll say about FDA approval of its medical device? Were those statements misleading? Did the CEO and Chief Medical Office know, or should they have known, that these statements were misleading? Did the statements affect the stock price? These "central" questions, more than suited for "class-wide resolution," generate "common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks omitted).

Third, the class representatives' claims are "typical of the claims ... of the class." Fed. R. Civ. P. 23(a)(3). Both named representatives, Russel Bleiler and Carl Bayney, rely on the same legal theories and the same misrepresentations as all the other shareholders. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009). They inspire no "unique or atypical defenses to [their] claims." *Id.*

Fourth, the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The lead plaintiffs have no "possible conflict of interests" or special "incentives." *In re Schering*, 589 F.3d at 602. Likewise, class counsel "are qualified and serve the interests of the entire class." *In re Gen. Motors*, 55 F.3d at 801. In this case, the counsel are experienced in securities class actions and have vigorously prosecuted this case.

### C. The settlement class fits within Rule 23(b)

Finally, the proposed class fits into one of the accepted "types" of class actions. Fed. R. Civ. P. 23(b). The stockholders situate themselves in the third category, claiming that "questions of law [and] fact predominate over any questions affecting individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* R. 23(b)(3). Both prongs are met here.

4

To start, resolving these disputes as a class is superior to each shareholder bringing an individual suit. Fed. R. Civ. P. 23(b). Class resolution preserves party and judicial resources, saving courts and the parties from relitigating the exact same misrepresentations in possibly thousands of cases.

Further, common issues predominate over individual issues. For their securities fraud claims, the shareholders must show that (1) Innocoll made a material misrepresentation, (2) the company knew or should have known this was a misrepresentation, (3) the shareholder purchased the stock in reliance on this misrepresentation, and (4) the shareholder lost money as a result of the misrepresentation. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011). The stockholders here all complain of the same misrepresentations, made by the same directors, that influenced the same stock price.

That does not necessarily mean, however, that each stockholder's losses were caused by these same misrepresentations. To prove that, each shareholder must explain how *he* directly relied on Innocoll's misrepresentations in choosing to purchase or hold stock. This shareholder-by-shareholder proof of reliance can easily "overwhelm the common" issues shared by the class—that is, unless shareholders can prove class-wide reliance, such as through the fraud-on-the-market presumption. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014).

The fraud-on-the-market theory posits that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988). In other words, because the securities market is "open and developed," a stock's price is set by all material information available to the market. *Id.* at 241 (internal quotation marks omitted). "Misleading statements" circulated in the market "will therefore defraud purchasers of stock even if the purchasers do not

5

directly rely on the misstatements." *Id.* at 241–42 (internal quotation marks omitted). To benefit from this fraud-on-the-market presumption, stockholders must show that (1) the misrepresentation was material, (2) the misrepresentation was public, (3) the market for that stock is efficient, and (4) the stockholders traded the stock between the time that the misrepresentations were made and the time that the truth was revealed. *Halliburton Co.*, 573 U.S. at 268. The company can then overcome this presumption by "show[ing] that the misrepresentation in fact did not lead to a distortion of price," or by proving "that an individual plaintiff traded or would have traded despite his knowing the statement was false." *Basic Inc.*, 485 U.S. at 248.

Invoking the fraud-on-the-market presumption here, the shareholders have made a sufficient showing of classwide reliance. The stock traded on NASDAQ, a national stock exchange. Four industry analysts followed Innocoll. Nearly 80 market makers offered Innocoll stock. Plus, the shareholders' expert undertook empirical tests suggesting that Innocoll's stock price responded to unexpected material news about Innocoll. For a settlement class, that is enough to show market efficiency, and so the fraud-on-the-market presumption applies. Based on this presumption, common issues predominate over individual issues in the settlement class.

Somewhat sidestepping this analysis, the shareholders suggest that the Court need not even consider reliance or the fraud-on-the-market presumption in order to find a settlement class. They point to a Second Circuit case, *In re AIG*, which observed that "a settlement class ordinarily need not demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the predominance requirement." *In re American International Group, Inc. Securities Litigation*, 689 F.3d 229, 232 (2d Cir. 2012). But that dicta does not mean that settlement classes need not provide *any* common proof of reliance. *George v. China Auto. Sys., Inc.*, No. 11-cv-7533, 2014 WL 173417, at *5 (S.D.N.Y. Jan. 15, 2014). Even if the Second Circuit was advancing such

6

flexibility, this Court would not leap to adopt it. No court within the Third Circuit appears to have adopted such a rule, and there has not been enough sophisticated litigation over the pluses and minuses of such a theory to yet draw upon. This Court is not inclined to be the first, particularly given that to do so in this case would be without the benefit of lively advocacy.

To the contrary, as the Supreme Court explained in *Halliburton Co.*, issued two years after *In re AIG*, classwide proof of reliance is core to predominance; without such proof, individual issues overwhelm common ones, "rendering class certification inappropriate." *See* 573 U.S. at 268, 282–83. This is true even for a settlement class. Without a possibility of common proof that "all of the class members were harmed by the defendant's conduct," the settlement class is not "sufficiently cohesive to warrant adjudication by representation." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297–98 (3d Cir. 2011).

Recognizing this, at least one court in the Second Circuit since *In re AIG* has denied certification to a proposed settlement class where the plaintiffs "have not … attempted to show reliance at all." *George*, 2014 WL 173417, at *5. The burden for showing classwide reliance for a settlement class might not be as high as it is for a litigation class, but it is not nonexistent. *See In re Lucent Techs., Inc., Secs. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004) (finding sufficient predominance in securities settlement class where plaintiffs at least relied upon fraud-on-the-market presumption).

In sum, the Court finds that the proposed settlement class meets all of Rule 23's requirements. The Court thus conditionally certifies the settlement class.

**II.     The Court preliminarily approves the settlement**

Before preliminarily approving a settlement, a court must find that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).  In assessing that, the Court considers the four factors set out in Rule 23(e):

- Is the relief provided for the class adequate?
- Are class members treated equitably?
- Was the proposal negotiated at arm's length?
- Did the class representatives and class counsel adequately represent the class?

Here the answer to each of these questions is yes.

### A. The settlement provides adequate relief

For the settlement, Innocoll will pay $2,755,000 into an escrow account, which will be used to compensate the shareholders and pay for administrative expenses, attorneys' fees and costs, and to provide awards to the class representatives. In exchange, the class members will give up all possible claims against Innocoll based on these alleged misstatements. Though $2,755,000 is not as high as the $22,900,000 the shareholders originally claimed, 12% is not an unreasonable recovery, given the "costs, risks, and delay of trial and appeal" for both sides. Fed. R. Civ. P. 23(e)(2)(C)(i); *see* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements— 2020 Review and Analysis* 6, Cornerstone Research (2021) (for securities cases with estimated damages of less than $25 million settled between 2011 and 2019, the median settlement was 16.8% of estimated damages).

Counsel have proposed an "effective[ ]" plan for "distributing [this] relief to the class." *Id.* R. 23(e)(2)(C)(ii). Once Innocoll identifies all shareholders during the relevant period, these shareholders will be notified of the settlement via email or first-class mail. After submitting a claim

and proving ownership of the shares, the shareholders will receive their portion of the money based on an objective formula. This is standard in securities settlements. *See, e.g., Mikhlin v. Oasmia Pharm. AB*, No. 19-cv-4349, 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6, 2021).

For attorneys' fees, counsel have proposed one-third of the settlement, or $918,333.33, plus up to $325,000 in expenses. *Id.* R. 23(e)(2)(C)(iii). The motion for attorneys' fees will come after the final approval of the settlement, and counsel will not be permitted to terminate the settlement if they are not satisfied with the fee award.

As for other relevant agreements, the parties have stipulated that if a negotiated number of class members opt out of the settlement, Innocoll may terminate the settlement. *Id.* R. 23(e)(2)(C)(iv). That exact number is confidential, and appears not to be a matter that causes either party agitation. "This type of agreement is standard in securities class action settlements and has" little to "no negative impact on the fairness of the [s]ettlement." *Christine Asia Co. v. Yun Ma*, No. 15-md-02631, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). Presumably, counsel here assessed the risk that the number of opt-outs is not likely to be so high as to put counsel's—or the Court's—work for naught.

Considering all this, the Court preliminarily finds that the settlement provides adequate relief.

### B. The class members will be treated equitably

Each shareholder will receive compensation based on an objective formula that considers how many shares owned, when the shares were purchased and for what price, and the estimated inflation of the price of the shares based on the alleged misstatements. This formula ensures that shareholders will recover "based on the ... extent of their [individual] injuries." *In re Ikon Office Sols., Inc., Secs. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000).

9

Beyond their share of the fund, the lead plaintiffs also seek a $10,000 incentive award. Such "[i]ncentive awards are not uncommon in class action litigation" and are often appropriate given the time and energy spent corresponding with counsel, producing documents, and sitting for depositions. *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 220 (E.D. Pa. 2011) (internal quotation marks omitted).

Although the incentive payment sum may be considered generous, it is not shockingly so, and therefore the Court preliminarily finds that the class members will be treated equitably.

### C. The proposal was negotiated at arm's length

There appears to be no collusion here. Settlement discussions occurred over a number of years and broke down several times. Ultimately, the parties hired an outside mediator to aid with discussions. *See Mikhlin*, 2021 WL 1259559, at *5. Thus, the Court finds the proposal was negotiated at arm's length.

### D. Class members were adequately represented

Finally, the class's representation appears to have been more than adequate. Per class counsel, the two lead plaintiffs have been active participants. Likewise, given the Court's frequent opportunity to observe the conduct of counsel, class counsel has represented the class diligently. Counsel are experienced, having handled many other securities class actions. In this case, counsel vigorously opposed two motions to dismiss and teed up a motion for class certification. They also conducted significant discovery, combing through over 400,000 documents, conducting depositions, and working with several experts.

Based on these factors, the Court finds that the settlement is fair, reasonable, adequate, and equitable. The Court therefore preliminarily approves the settlement.

### III. The Court approves the proposed notice

Notice of the settlement must be given in a "reasonable manner to all class members who would be bound by the proposal" and who can be "identifi[ed] through reasonable effort." Fed. R. Civ. P. 23(e)(1)(B); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974). Per the parties' proposed plan, each shareholder will receive notice via email, if a current email address is available, or via first class mail to the current or last known address. The notice will also be disseminated via *GlobalNewswire* and in *Investor's Business Daily*. Substantively, the notices will explain the claims at issue, the history of the case, the terms of the settlement, the process for filing a claim, and class members' right to opt out or object to the settlement, the plan for distributing the funds, and the proposed amount of attorneys' fees. *See* 15 U.S.C. § 78u-4(a)(7). The stipulations and notices will be posted on a designated website, where class members will be able to submit claims or opt out. This plan appears "reasonably calculated" to put class members on notice of the settlement. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Court approves the proposed notice.

### CONCLUSION

The Court preliminarily certifies the class for settlement purposes and grants preliminary approval of the Settlement, subject to a final fairness hearing. This case has gone on for more than four years. Significant discovery has taken place, and the settlement negotiations took place at arm's length. Plaintiffs' counsel has extensive experience in handling these types of matters and achieving successful results for its clients. Once notices are sent out, proposed class

members will have an opportunity to voice their objections and raise any issues they might have.

An appropriate order follows.

BY THE COURT:

*[signature]*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE