## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Innocoll Holdings Public Limited Company Securities Litigation<br><br>CLASS ACTION<br><br><br>This Document Relates To:<br>All Actions | C.A. No. 2:17-cv-00341-GEKP<br><br>CLASS ACTION |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................... **6**

II.    PROCEDURAL HISTORY ..................................................................... **7**

III.   PLAINTIFFS' CLAIMS ......................................................................... **9**

IV.   THE RELEASE ....................................................................................... **10**

V.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS ....... **11**

VI.   THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT AS IT IS FAIR, REASONABLE, AND ADEQUATE .................................................. **11**

   A.    The Applicable Standards under Fed. R. Civ. P. 23(e) and the Third Circuit's Fairness Presumption ......................................................... **11**

   B.    The Procedural Factors Support Approval ......................................... **13**

       1.    Plaintiffs and Lead Counsel Have Adequately Represented the Class/ Lead Counsel is Experienced ............................................. **14**

       2.    The Settlement Results from Arm's-Length Negotiations ............. **15**

       3.    There Was Sufficient Discovery ......................................... **16**

       4.    No Settlement Class Member Requested Exclusion or Objected to the Settlement .................................................................... **17**

   C.    The Relief Provided for the Class is Adequate ................................... **18**

       1.    The Complexity, Expense, Likely Duration of Litigation, the Risks of Establishing Liability and Damages, and Maintaining the Class Action Through Trial, all Support Final Approval ................... **18**

       2.    The Settlement Amount is Reasonable ................................. **22**

       3.    Additional Factors Support Approval ................................... **24**

           a)    The Procedure for Processing Claims Supports Approval .................... **24**

           b)    Class Members Have the Right to Opt Out .......................... **25**

           c)    The Attorneys' Fees Are Reasonable ................................. **25**

**d)      The Parties' Standard Termination Agreement Is Fair**.......................**25**

**VII.    THE NOTICE TO THE CLASS SATISFIED ALL REQUIREMENTS**..................**26**

**VIII.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**.............................**27**

**IX.     CONCLUSION**..............................................................................................................**28**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alves v. Main*,
    No. CIV.A. 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ...................................... 14

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ................................................................................................ 21

*California v. Teva Pharm. Indus., Ltd.*,
    No. CV 19-3281, 2020 WL 3128027 (E.D. Pa. June 10, 2020) ............................................... 11

*Careccio v. BMW of N. Am. LLC*, No. CIV. A.,
    08-2619, 2010 WL 1752347 (D.N.J. Apr. 29, 2010) ................................................................ 26

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981) .................................................................................................................. 10

*Christine Asia Co. v. Yun Ma*,
    No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..................... 24

*Demmick v. Cellco P'ship*,
    No. CV 06-2163 (JLL), 2015 WL 13643682 (D.N.J. May 1, 2015) ........................................ 26

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) .................................................................................................... 10

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) ........................................................... 25

*Galt v. Eagleville Hospital*,
    310 F. Supp. 3d 483 (E.D. Pa. 2018) ...................................................................................... 17

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ............................................................................................. 10, 12

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) .................................................................................................. 21

*Hall v. Accolade, Inc.*,
    No. CV 17-3423, 2019 WL 3996621 (E.D. Pa. Aug. 23, 2019) ............................................... 12

*Harshbarger v. Penn Mut. Life Ins. Co.*,
    No. CV 12-6172, 2017 WL 6525782 (E.D. Pa. Dec. 20, 2017) ............................................... 12

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)....................................24

*Hicks v. Stanley*,
   No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..............................14

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .........................................................................................25

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)................................................................................................16

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008).........................................................................................13

*In re DVI, Inc. Sec. Litig.*,
   639 F.3d 623 (3d Cir. 2011)................................................................................................19

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................26

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000).........................................................................................18

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
   No. CV 17-341, 2022 WL 717254 (E.D. Pa. Mar. 10, 2022)..................................................22

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
   No. CIV.A. 08-CV-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010) .................................26

*In re Nat'l Football League Players Concussion Inj. Litig.*,
   821 F.3d 410 (3d Cir. 2016).......................................................................................12, 15, 16

*In re Ocean Power Techs., Inc.*,
   No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) .......................................15, 23

*In re Par Pharm. Sec. Litig.*,
   No. CIV. A. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013)......................................17

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)......................................................................................11, 20, 21

*In re Ravisent Techs., Inc. Sec. Litig.*,
   No. CIV.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ....................................19

*In re Viropharma Inc. Sec. Litig.*,
  No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .................................................. 22

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011).................................................................................... 21

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)............................................................................................. 13, 21

*Jackson v. Wells Fargo Bank, N.A.*,
  136 F. Supp. 3d 687 (W.D. Pa. 2015).................................................................................... 16

*Kanefsky v. Honeywell Int'l Inc.*,
  No. 18-CV-15536 (WJM), 2022 WL 1320827 (D.N.J. May 3, 2022) .................................... 12

*McDonough v. Toys R Us, Inc.*,
  80 F. Supp. 3d 626 (E.D. Pa. 2015) ...................................................................................... 18

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
  No. CV 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017) ................................................ 15

*Schuler v. Medicines Co.*,
  No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016)..................................... 13

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011)............................................................................................. 11, 26

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
  No. CV 13-6731, 2017 WL 4167440 (E.D. Pa. Sept. 20, 2017) ........................................ 21, 23

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)...................................................... 20

*Whiteley v. Zynerba Pharms., Inc.*,
  No. CV 19-4959, 2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ............................................ 22

## **Rules**

Fed. R. Civ. P. 23 ........................................................................................................ passim

Pursuant to Fed. R. Civ. P. 23(e), the Court-appointed Lead Plaintiffs Russel Bleiler and Carl Bayney ("Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this Memorandum of Law in support of their unopposed motion for final approval of the Settlement and Plan of Allocation.[1]

## I.   INTRODUCTION

After five years of litigation, two motions to dismiss, five depositions, review of 400,000 pages of documents, and a fully-briefed motion for class certification, Plaintiffs are pleased to present for the Court's approval a settlement that disposes of all claims in this action for a non-reversionary cash payment of $2,755,000 ("Settlement").

The Settlement recovers 12% of the Settlement Class's maximum potential damages. This is an excellent recovery in a case with no accounting restatement, no Securities & Exchange Commission ("SEC") or Department of Justice ("DOJ") investigation, and no other obvious external signs of fraud, and where Plaintiffs would need foreign discovery and experts to prove their claims. Plaintiffs also faced technical challenges unusual in securities class actions: trading in Innocoll securities was so sparse that there were doubts about whether Plaintiffs would be able to certify a class for the full class period, or at all. The Settlement recovers 26% of damages when excluding the portion for which trading was especially limited.

The Settlement results from years of zealous and creative negotiations between experienced counsel. The Parties exchanged settlement demands and offers at opportune times

---

[1] All capitalized terms not otherwise defined herein are defined in the Stipulation of Settlement ("Stipulation") filed on November 24, 2021 (ECF No. 121-2) or the Declaration of Jonathan Horne in Support of the Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Award to Lead Plaintiffs ("Horne Decl."), filed concurrently herewith.  Unless otherwise noted, all emphases are added and citations omitted.

during litigation. But it was only after several false starts that the Parties finally bridged the gap between their positions.

The Court also has information that was unavailable when it granted preliminary approval: the Settlement Class's response. It is overwhelmingly positive. Though the postcard notice was mailed to 4,465 potential Settlement Class Members, none have sought exclusion or objected to the Settlement to date.

In sum, the Settlement is an excellent result negotiated by Plaintiffs who had learned enough about the case to know the deal was good. It is, at a minimum, fair, reasonable, adequate, and in the best interests of the Settlement Class.

The Court has already preliminarily addressed the remaining questions it must answer. In granting preliminary approval, it preliminarily found that: (a) the Settlement Class meets the requirements of Federal Rule of Civil Procedure 23; (b) the method and content of the Notice is adequate; and (c) the plan of allocation is, like the Settlement itself, fair, reasonable, and adequate. Nothing has changed, so the Court should give these questions the same answers it gave when it granted preliminary approval.

The Court should grant Plaintiffs' motion in full.

## II.   PROCEDURAL HISTORY

This case was filed in early 2017. Lead Plaintiffs and Lead Counsel were promptly appointed (ECF No. 18) (there were no other movants), and timely filed their amended complaint. (ECF No. 19).  The amended complaint raised claims against Defendants Innocoll Holdings Public Limited Company, Anthony P. Zook, and Lesley Russell ("Defendants"), on behalf of investors who purchased Innocoll securities from July 25, 2014 through December 29, 2016. *Id.* ¶¶1, 25, 27-28.

The Defendants moved to dismiss the amended complaint. (ECF No. 21). The Court found that while "what the plaintiffs have alleged would surely be enough to survive a motion to dismiss under the normal standard [], the allegations in the complaint do not reach the exacting standard set forth in the [Private Securities Litigation Reform Act] PSLRA." (ECF No. 46, at 19). The Court granted the motion to dismiss with leave to amend. (*Id.* at 21).

Plaintiffs timely filed their Second Amended Complaint ("Complaint").  (ECF No. 48). After the motion to dismiss the Complaint was fully briefed but before a hearing, the Court stayed the action at the Parties' request while they pursued mediation. (ECF No. 56). The mediation proved unsuccessful, Horne Decl. ¶15, so the hearing proceeded on March 10, 2020. (ECF No. 65). After post-argument briefing, the Court denied the motion to dismiss on March 25. (ECF No. 69).

Discovery began in April 2020. Through cooperative negotiations, the parties resolved the vast majority of disputes regarding the scope and timing of document production, issues that arose during production, or the timing of depositions. (*See* Horne Decl. ¶10). The Parties submitted the few remaining issues to the Court for resolution. (ECF Nos. 76, 102).

As befits a case with 8-figure damages and a nearly decade-long relevant period, the scope of discovery was immense. Plaintiffs reviewed and categorized more than 400,000 pages of documents. (Horne Decl. ¶11). They further analyzed select documents that could be important to the case. (*Id.*) By reviewing the documents shortly after their production and using Rule 33 Interrogatories, Rule 36 Requests for Admission, and a Rule 30(b)(6) deposition, Plaintiffs were able to timely raise what they saw as gaps in Defendants' production. Plaintiffs filled these gaps through negotiations or narrow additional requests for production.

Plaintiffs filed their initial motion for class certification in August 2020 and a renewed

motion in March 2021. (ECF Nos. 81, 107). Each side filed two expert reports. (ECF Nos. 81-1, 90-2, 112-2, 112-3). Both Plaintiffs' and Defendants' experts were deposed, as were Plaintiffs Russell and Bayney. (Horne Decl. ¶22). The renewed motion for class certification was fully briefed on April 6, 2021, at which time the Court granted Defendants' request for an evidentiary hearing on the renewed motion. (ECF No. 115). On May 19, 2021, the Court scheduled the evidentiary hearing and oral arguments for July 6, 2021. (ECF No. 118).

The Parties had periodically discussed settlement since the Court denied Defendants' motion to dismiss. (Horne Decl. ¶13). In late 2020 and early 2021, the Parties explored several different ways of structuring settlement discussions to push themselves to an agreement. (Horne Decl. ¶16). While the Parties could not agree to such proposals to structure settlement discussions, they resumed exchanging settlement demands and offers. (Horne Decl. ¶17). These exchanges accelerated after the Court scheduled the evidentiary hearing on Plaintiffs' motion for class certification. (*Id*.) On June 27, 2021, the Parties agreed in principle to resolve the claims asserted in the Action for $2.755 million in return for a release of all claims against the Defendants. *Id*. The Parties promptly notified the Court (ECF No. 119) and negotiated the Settlement documents. The Court preliminarily approved the Settlement on March 10, 2022. (ECF No. 129).

## III.   PLAINTIFFS' CLAIMS

The Complaint alleges that Defendants represented that the U.S. Food and Drug Administration ("FDA") "approved" and "deemed [] acceptable" portions of the pathway to approval of Innocoll's leading developmental-stage pharmaceutical product, XaraColl. (ECF No. 48 ¶¶116, 118). In March 2016, Defendants told investors that the only significant remaining step before filing the XaraColl new drug application ("NDA") with the FDA was the successful completion of its Phase 3 clinical trials. (*Id*. ¶120). In May 2016, Defendants announced the Phase

3 trials had succeeded, adding that there were "no gating factors" to filing the NDA. (*Id.* ¶ 127). Then, on December 29, 2016, Innocoll disclosed that the FDA issued a "Refusal to  File" letter, rejecting Innocoll's XaraColl NDA and stating that the NDA was "not sufficiently complete to permit a substantive review." (*Id.* ¶ 149). On this news, Innocoll's securities fell $1.08 per share, or 61%, to close at $0.69 per share on December 30, 2016. (*Id.* ¶ 150).

## IV.    THE RELEASE

In exchange for $2.755 million, the <u>Releasing Plaintiffs</u> will release the <u>Released Claims Against Defendants</u> against the <u>Defendant Releasees</u>.

The <u>Releasing Plaintiffs</u> are:

[T]he Lead Plaintiffs, the Lead Plaintiff Releasees, the Settlement Class, all Settlement Class Members, and the successors and assigns of Lead Plaintiffs and of all Settlement Class Members, in any capacity.

Stipulation, ¶1.34

The <u>Released Claims Against Defendants</u> are:

[A]ny and all claims (including without limitation Unknown Claims []), demands, rights, causes of action and liabilities, of every nature and description whatsoever, whether based in law or equity, arising under federal, state, local, statutory or common law, or any other law, rule or regulation, including both known and unknown claims with respect to the purchase or sales of Innocoll securities during the Class Period: (1) relating to the purchase, sale, or holding of securities during the Settlement Class Period <u>and</u> <u>either</u> (a) relating in any way to the allegations of the Complaint or Amended Complaint or Second Amended Complaint or otherwise asserted in the Action; or (b) that the Releasing Plaintiffs have asserted, could have asserted, or could assert in the future, in any forum, that are based upon, arise out of, or relate in any way to the facts, matters, transactions, allegations, claims, losses, damages, disclosures, filings, events, representations, or statements that are set forth in the Complaint or Amended Complaint or Second Amended Complaint or that are otherwise at issue in the Action.

*Id.* ¶ 1.32.

The <u>Defendant Releasees</u> are:

Defendants, and Defendants' current or former parents, subsidiaries, affiliates, predecessors, successors, divisions, joint ventures, and general or limited partnerships, and each of their respective current or former officers, directors, trustees, partners, contractors, auditors, principals, agents, managing agents, employees, attorneys, accountants,

investment bankers, underwriters, insurers or reinsurers in their capacities as such, as well as each of the immediate family members, heirs, executors, personal or legal representatives, estates, beneficiaries, predecessors, successors and assigns of the Defendants and other individuals referred to in this paragraph

*Id.* ¶ 1.30(i).

These are standard terms in securities class actions. (Horne Decl. ¶19.)

## V.     THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

In granting Preliminary Approval, the Court applied Rules 23(a) and (b)(3) and found that they were satisfied. (ECF No. 127 at 3-7). The Court then conditionally certified the Settlement Class. (*Id.* at 7). Nothing has changed since the Court's preliminary approval order, so the Court should finally certify the Settlement Class.

## VI.    THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT AS IT IS FAIR, REASONABLE, AND ADEQUATE

### A.     The Applicable Standards under Fed. R. Civ. P. 23(e) and the Third Circuit's Fairness Presumption

All class action settlements require court approval. Fed. R. Civ. P. 23(e). Courts should approve class action settlements if they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Third Circuit recognizes a "strong presumption in favor of voluntary settlement agreements," which is "especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010). Moreover, the Supreme Court has cautioned that in evaluating a proposed class-action settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Before the 2018 amendment to Rule 23, courts in the Third Circuit considered the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) in determining whether class action settlements are fair, reasonable, and adequate. These are:

(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[2]

Courts also could (but were not required to) consider the additional factors set forth in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998). The *Prudential* factors merely "illustrat[e]" additional analyses courts *may* conduct. *California v. Teva Pharm. Indus., Ltd.*, No. CV 19-3281, 2020 WL 3128027, at *7 (E.D. Pa. June 10, 2020).[3] They are:

[10] the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [11] the existence and probable outcome of claims by other classes and subclasses; [12] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [13] whether class or subclass members are accorded the right to opt out of the settlement; [14] whether any provisions for attorneys' fees are reasonable; and [15] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential*, 148 F.3d at 323.[4]

---

[2] Plaintiffs are not aware of any evidence that Innocoll and/or its parent would not be liable for or could not pay a greater judgment. "[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011).

[3] Plaintiffs renumber the *Prudential* factors consecutively from the *Girsh* factors.

[4] Most of the *Prudential* factors are irrelevant here (just as they were irrelevant in *Prudential*, 148 F.3d at 323-24). Here, no individual lawsuits were filed. Thus, there has been no experience in adjudicating individual actions, nor will there ever be. Scientific knowledge as understood in *Prudential* is not relevant here. The extent of discovery on the merits is addressed in response to *Girsh* factor three and Rule 23(e)(2)(C).

In December 2018, Rule 23(e) was amended. As amended, Rule 23 asks courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

But *Girsh* and *Prudential* had anticipated the 2018 amendments. Thus, as "the discussion in *Girsh* substantially overlaps with the factors identified in Rule 23," *Hall v. Accolade, Inc.*, No. CV 17-3423, 2019 WL 3996621, at *2 (E.D. Pa. Aug. 23, 2019), courts folded the new Rule 23 factors into the *Girsh* and *Prudential* analysis. *Kanefsky v. Honeywell Int'l Inc.*, No. 18-CV-15536 (WJM), 2022 WL 1320827, at *4 (D.N.J. May 3, 2022) ("The Third Circuit has, however, continued to apply the *Girsh* and *Prudential* factors.")

### B.    The Procedural Factors Support Approval

In determining whether a settlement is fair, reasonable, and adequate, courts in the Third Circuit first consider how the settlement was negotiated. Courts give settlements an "initial presumption of fairness" where: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Harshbarger v. Penn Mut. Life Ins. Co.*, No. CV 12-6172, 2017 WL 6525782, at *3 (E.D. Pa. Dec. 20, 2017) (quoting *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 436 (3d Cir. 2016), *as amended* (May 2, 2016)). Under Rule 23, Court should consider whether "the class representatives have adequately

represented the class [and] the proposal was negotiated at arm's length". Fed. R. Civ. P. 23(e)(2)(A)&(B). And the third *Girsh* factor asks the Court to examine the stage of the proceedings and the amount of discovery completed. *Girsh*, 521 F.2d at 157.

When settlements negotiations meet these factors, courts initially presume they are fair. Put simply, courts can have some confidence that a settlement that was zealously negotiated at arm's length by plaintiffs and counsel whose incentives are aligned with the class's and who have sufficient information is fair, reasonable, and adequate.

### 1. Plaintiffs and Lead Counsel Have Adequately Represented the Class/ Lead Counsel Is Experienced

Courts in the Third Circuit generally consider two components of adequacy: "(1) the qualifications, experience, and general abilities of the plaintiffs' lawyers to conduct the litigation and (2) whether the interests of the lead plaintiffs are sufficiently aligned with the interests of absentees." *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *4 (D.N.J. June 24, 2016) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004)).

Lead Plaintiffs' Counsel The Rosen Law Firm P.A. has been prosecuting securities class actions for almost two decades. During this time, they have scored notable successes for investors. Rosen Law Firm Resume, attached as Exhibit 2 to the Horne Declaration. These include: a $250 million settlement for a class of investors in Alibaba, still the largest ever securities class action settlement against a company based in China; a $110 million settlement on behalf of investors in Fiat Chrysler Automobiles, N.V.; and a $20.2 million settlement on behalf of investors in a biotech company. Rosen's attorneys have recovered a million dollars or more in each of a dozen securities class actions brought on behalf of investors in biotech companies. They put their skill and experience to use in this case. As the Court previously recognized, "given the Court's frequent opportunity to observe the conduct of counsel, class counsel has represented the class diligently."

Order, at 10.

Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class. Like other class members, Plaintiffs want to achieve the highest possible recovery. *See In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 206 (E.D. Pa. 2008), *aff'd sub nom. In re DVI, Inc. Sec. Litig.*, 639 F.3d 623 (3d Cir. 2011) (representation adequate where plaintiffs had no interests "which may be antagonistic to those of the class[,]" and given plaintiffs' significant financial stake in defendants' securities, "they, like all members of the class, stand to benefit from a favorable resolution to this litigation."). In granting preliminary approval, "[p]er class counsel, the two lead plaintiffs have been active participants." Order, at 10. On final approval, Messrs. Bayney and Bleiler declare that they have spent 73 and 90 hours, respectively, pursuing claims in this case, and the latter communicated with counsel more than 150 times. Declarations of Carl Bayney and Russel Bleiler, ¶10, Horne Dec. Exs. 3&4.

Accordingly, and as the Court concluded during preliminary approval, both counsel and plaintiffs adequately represented the class. Order, at 10.

### 2.     The Settlement Results from Arm's-Length Negotiations

"The participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's-length and without collusion between the parties." *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014) (internal quotation omitted). Further, "[a] breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature." *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005).

Settlement discussions in this case started at a mediation in August 2019 and continued intermittently until the Parties agreed to the Settlement in June 2022. (Horne Decl. ¶13-18). Had

there been any collusion, the Parties would not have left the mediation without a settlement, would not have had false starts in subsequent negotiations, and would not have had to propose and abandon several structures designed to make settlement discussions more productive.

### 3.   There Was Sufficient Discovery

In determining whether "there was sufficient discovery", "[w]hat matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 439 (3d Cir. 2016), *as amended* (May 2, 2016). When plaintiffs conduct particularly extensive investigations at the pleadings, their investigations and some briefing on motions to dismiss often provide enough information. *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *17 (D.N.J. Nov. 15, 2016)("Courts in this Circuit frequently approve class action settlement[s] despite the absence of formal discovery."). This is often true in actions subject to the PSLRA, as it both blocks discovery before a court's decision finding that a complaint states a claim and imposes exacting pleading standards. *See P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. CV 11-2164, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017).

Plaintiffs conducted two investigations to meet the PSLRA's exacting standards. To complete their investigations, Plaintiffs scoured public records, spoke with former employees, and consulted a regulatory expert, among other things. (Horne Decl. ¶5). Briefing Defendants' motions to dismiss the First and Second Amended Complaints gave Plaintiffs yet more insight into the case, as did the Court's orders granting the first and denying the second

This might have given Plaintiffs enough information, but they also took extensive discovery. Over a year, Plaintiffs obtained and categorized 400,000 pages of documents. (Horne Decl. ¶11.) Plaintiffs served requests for admission and interrogatories and sought letters rogatory

and prepared to take depositions in Ireland. (Horne Decl. ¶22). Plaintiffs and Defendants produced expert reports in support of and in opposition to Plaintiffs' motion for class certification, and collectively deposed both experts, both Plaintiffs, and a Rule 30(b)(6) representative of Innocoll. (*Id.*) In other words, Plaintiffs' Counsel "had developed enough information about the case to appreciate sufficiently the value of the claims." *NFL Players*, 821 F.3d at 439; *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 700 (W.D. Pa. 2015) (similar amount of discovery supported approval).

### 4.   No Settlement Class Member Requested Exclusion or Objected to the Settlement

The second *Girsh* factor "gauge[s] whether members of the class support the settlement." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 438 (3d Cir. 2016), *as amended* (May 2, 2016). Courts measure the class's response by evaluating requests for exclusions and objections. *Id.*

The Claims Administrator mailed 3,540 copies of the Postcard Notice to potential Settlement Class Members. (Declaration of Josephine Bravata ("SCS Decl.") attached as Exhibit 1 to the Horne Decl., ¶11). Nominees provided notice to 925 additional Settlement Class Members. (*Id.* ¶ 8.) *Id.* The deadline for Settlement Class Members to: submit claims is June 6, 2022; request exclusion from the Settlement is June 15, 2022; and object to the Settlement is June 22, 2022. (SCS Decl. ¶¶11-16).To date, no Settlement Class Members have either objected or requested exclusion. (*Id.*).

"The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption in favor of the Settlement." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). Accordingly, the

Settlement is fair, reasonable, and adequate.[5]

> *          *          *          *          *

The Settlement was negotiated at arm's length by experienced counsel with sufficient discovery and no Settlement Class Members objected or even sought exclusion. The Settlement is entitled to a presumption of adequacy.

### C.    The Relief Provided for the Class is Adequate

*Girsh* and Rule 23(e) also set down guidelines for the Court to evaluate the substance of the Settlement. *Girsh* factors 1, 4-6, and 8-9 asks courts to weigh the complexity, expense, likely duration, and risks of continued litigation against the range of reasonableness in light of the best possible recovery as well as a possible recovery taking into account the risks of litigation. Rule 23(e)(2)(C) likewise directs the Court to consider whether "the relief provided for the class is adequate, taking into account [] the costs, risks, and delay of trial and appeal" along with other relevant factors.

Should the Court approve the Settlement, Settlement Class Members will receive a substantial fraction of what they could achieve if five or more years hence, they won at trial on all their claims and preserved their victory on appeal.  The Settlement is an excellent result.

### 1.    The Complexity, Expense, Likely Duration of Litigation, the Risks of Establishing Liability and Damages, and Maintaining the Class Action Through Trial, all Support Final Approval

"Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 ES, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013). No exception, this case is replete with  "complex factual issues" requiring

---

[5] As the Court ordered, Settlement Class Members can exclude themselves through the Settlement website.

"substantial [] class-wide merits and damages discovery" and, if it continued, would involve "extensive motion practice concerning class certification and summary judgment." *Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 493-94 (E.D. Pa. 2018).

First, proving scienter is always difficult, but here, it would take expert testimony even to make the jury understand what the Defendants' allegedly false statements were ***about***. The question on which Defendants allegedly misled investors was whether XaraColl was a drug, a device, or a drug/device combination product. The last of these, the correct answer to the question, is a category whose existence is obscure to the public. Even to establish that Defendants' statements were false, Plaintiffs' expert would have to establish to the jury's satisfaction that even though the FDA issued thousands of pages of guidance on the issue, it was obvious there was a risk that XaraColl was a drug/device combination. Plaintiffs' expert would also have to explain the nature of the relationship between the FDA and sponsors persuasively enough to show that companies in Defendants' shoes would almost invariably seek guidance from the FDA.

Defendants have continued to maintain that XaraColl is a drug, not a drug/device combination. They would hire an expert who would testify that it was at least not obvious that Defendants were wrong and that Defendants were not required or expected to ask the FDA.

If Plaintiffs survived Defendants' summary judgment motion, the jury would have to decide whose expert and which part of their testimony to credit. These battles of the experts are always expensive but their outcome is hard to predict. *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 644 (E.D. Pa. 2015). Here, in particular, the jury might find that Defendants made an honest though perhaps negligent mistake. That is the conclusion the Court drew from the facts pled in Plaintiffs' amended complaint. (ECF No. 46, at 20).

Second, to succeed a trial, plaintiffs would have to show that defendants made statements

with scienter, "a mental state 'embracing intent to deceive, manipulate, or defraud.'" *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 181 (E.D. Pa. 2000). Defendants may claim that they reasonably or negligently, but not recklessly, relied on the FDA's failure to alert Innocoll that XaraColl was a drug/device combination. Defendants would bolster their argument by stating they had no motive to deceive. While Zook and Russell undoubtedly benefited from the alleged scheme and would have benefited even more if it had succeeded, they did not sell their own personally-held stock, the most obvious way to benefit from a stock price their statements artificially inflated.

Third, proving damages and loss causation relies on expert testimony and is complicated in its own right. *See In re Ravisent Techs., Inc. Sec. Litig.*, No. CIV.A.00-CV-1014, 2005 WL 906361, at *8 (E.D. Pa. Apr. 18, 2005) (recognizing difficulty of proving damages in securities actions). Plaintiffs' expert would produce a trading model which would have to account for general market and industry conditions and isolate the impact of Defendants' false statements, as opposed to other news disclosed at the same time. Defendants' expert and fact witnesses would challenge Plaintiffs' expert. If the jury credited Defendants' expert in full, it would likely return a verdict against Plaintiffs for failure to prove damages. If the jury partially credited Defendants' expert, it may award less than the $2.755 million available to the Settlement Class right now.

Fourth, deposition discovery in this case would be unusually expensive. While Defendants were located in Pennsylvania, Innocoll's principal offices were located in Athlone, Ireland. Many if not most of the relevant employees have left Innocoll. Plaintiffs must request their depositions through letters rogatory. In addition to the attorneys' fees spent prosecuting the letters rogatory in Ireland, Plaintiffs would need to hire an Irish barrister to supervise the deposition. Plaintiffs would also have to pay the witnesses' reasonable costs, including attorneys' fees to prepare for and attend the deposition. Plaintiffs' Irish counsel quoted total costs of approximately €55,000-140,000 for

the first deposition and €25,000-100,000 for each subsequent deposition. These costs would have to be borne by the class in any settlement or victory. (Horne Decl. ¶12).

Fifth, unusually among securities class actions, Plaintiffs might not be able to establish for litigation purposes that Innocoll's shares traded on an efficient market. Innocoll was relatively thinly traded, was covered by few analysts, and had substantial bid-ask spreads, among other things, particularly in the period before December 10, 2015. These are indicia courts examine when examining whether plaintiffs have shown that a security trades on an efficient market. *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 634 (3d Cir. 2011), *abrogated by Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013).

Yet if the Court found that Plaintiffs had not shown market efficiency, class members would have to show individual reliance, precluding class treatment. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 n.6 (2011). Thus, the Court might not have certified a class at all or might have certified a class consisting of only investors who purchased shares after December 10, 2015, the alternative relief Defendants sought in opposing Plaintiffs' motion for class certification. If it did the latter, damages would fall to $10.8 million.

Sixth, the core of Plaintiffs' case are statements Defendants made claiming that the work necessary to prepare XaraColl's New Drug Application ("NDA") was substantially complete. Defendants' first such statement was on March 17, 2016. Class members who purchased in the 21 months of the Class Period before that day have weaker claims. Thus, there is a good chance Plaintiffs would only be able to maintain a class beginning March 17, 2016, further cutting damages.

Though the result of continued litigation is uncertain, there is one guarantee: it will take a long time. *See Prudential*, 148 F.3d at 318 ("[T]he trial of this class action would be a long, arduous

process requiring great expenditures of time and money on behalf of both the parties and the court. The prospect of such a massive undertaking clearly counsels in favor of settlement."). The Court has denied Defendants' motion to dismiss. Before Settlement Class Members can be compensated, Plaintiffs must certify a class, survive summary judgment, survive Defendants' pre-trial motions, win at trial, survive Defendants' post-trial motions, and win on appeal. These steps would delay recovery for at least five years, and potentially much longer.

Indeed, securities class actions are *so* lengthy and *so* complex that plaintiffs risk that the law will shift beneath their feet, eliminating a victory that was unimpeachable under the standards that existed when it was secured. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (in case brought in 2005, Supreme Court decision after entry of verdict in Plaintiffs' favor reduced the billion-dollar verdict into an approximately $78 million recovery); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding securities class action jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of intervening Supreme Court case); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231-32 (10th Cir. 1996) (case filed in 1973 and tried to a verdict for plaintiffs in 1988 with jury instructions compelled by then-controlling precedent which the Supreme Court overruled in a 1994 opinion causing the court to vacate the jury verdict in 1996).

## 2. The Settlement Amount is Reasonable

To evaluate the reasonableness of a settlement amount, the Court should look at "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing [] compared with the amount of the proposed settlement." *Prudential*, 148 F.3d at 322 (citation omitted). The ultimate question is "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. In doing

so, the Court should bear in mind that a "complete and total victory throughout the entire course of complex securities litigation—occurs with the regularity of unicorn sightings." *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CV 13-6731, 2017 WL 4167440, at *6 (E.D. Pa. Sept. 20, 2017) (Schiller, J.).

Estimated maximum damages were $22.9 million, assuming that the Court granted Plaintiffs' entire motion for class certification. (Horne Decl. ¶20). If the Court only certified a class of investors who purchased beginning December 10, 2015, damages would fall to $10.8 million. (*Id.*) Thus, the $2.755 million Settlement recovers over 12% of Plaintiffs' maximum estimated damages and 26% of the damages for the period in which the showing of market efficiency is stronger.

As set out above, this was an unusually difficult case. Indeed, were no outward signs that the case would be strong such as an accounting restatement or government investigation. The case was plainly undesirable: only The Rosen Law Firm, P.A. sought appointment as lead counsel. Yet the proportionate recovery estimates are respectively slightly below and slightly higher than settlements in securities class actions with similar damages. According to Cornerstone Research, the median ratio of settlement to investor losses for securities class actions settlements approved from 2012 through 2020 with damages of less than $25 million was 18%. Laarna T. Bulan *et al*, Securities Class Action Settlements: 2021 Year in Review, at 6  (Cornerstone Research 2022) ("Cornerstone Report") [6]; *see also In re Viropharma Inc. Sec. Litig.*, No. CV 12-2714, 2016 WL 312108, at *13-14 (E.D. Pa. Jan. 25, 2016) (citing historical median settlements as a percentage of recovery and finding that settlement reflecting approximately 9-10% of maximum estimated losses

---

[6] Available at <https://securities.stanford.edu/research-reports/1996-2021/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf>

weighed in favor of approval); *Whiteley v. Zynerba Pharms., Inc.*, No. CV 19-4959, 2021 WL 4206696, at \*5 (E.D. Pa. Sept. 16, 2021) (finding a settlement of 10.4% of estimated damages "is well above similar average settlements in securities litigation."). The Settlement falls below rather than exceeds the percentage because damages are just short of $25 million. Had damages been $25.9 million rather than $22.9 million, though the settlement would recover a lower proportion of damages, the recovery would ***exceed*** the median recovery where damages are $25 million to $74 million: 7.3%.  Cornerstone Report, at 6. Thus, and as the Court recognized on preliminary approval, the $2.755 million is "not an unreasonable recovery, given the 'costs, risks, and delay of trial and appeal' for both sides." *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, No. CV 17-341, 2022 WL 717254, at \*4 (E.D. Pa. Mar. 10, 2022).

### 3. The Additional Factors Support Approval

#### a) The Procedure for Processing Claims Supports Approval

*Prudential* factor 15 asks the Court to consider whether the procedure for processing claims is fair. Rule 23 (e)(2)(c)(ii) requires exactly the same. Here, Settlement Class Members must submit lists of transactions and documentary proof, both of which are necessary to identify Settlement Class Members and assign them a recognized loss. Courts have found this exact procedure met *Prudential* factor 15. *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CV 13-6731, 2017 WL 4167440, at \*6 (E.D. Pa. Sept. 20, 2017); *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at \*24 (D.N.J. Nov. 15, 2016) (and noting that these "claim-processing procedures are the standard ones used in securities class-action settlements.").

The requirement of documentary proof protects Settlement Class Members from fraudulent claims. Those risks are not hypothetical. Judge Kenney has on his docket a criminal case charging the defendants with filing fraudulent claims in securities class action settlements. The defendants allegedly pocketed $40 million that rightfully belonged to settlement class members. *United States*

*v. Cammarata*, 21-cr-427-CFK (E.D. Pa.).

### b) Class Members Have the Right to Opt Out

Class members have the right to opt out, thus satisfying *Prudential* factor 13 and further supporting final approval.

### c) The Attorneys' Fees Are Reasonable

The relief provided for the Settlement Class is adequate when the terms of the proposed award of attorneys' fees are considered. Rule 23(e)(2)(C)(iii). Plaintiffs' Memorandum of Law in Support of their Motion for An Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs ("Fee Brief"), filed herewith, shows that the attorneys' fee request of one-third of the Settlement Amount is reasonable in light of Lead Counsel's substantial work and efforts, the results achieved, and relative awards in similar cases. But if the Court disagrees, its approval of the proposed award of attorneys' fees is separate from approval of the Settlement, and neither Plaintiffs nor Lead Counsel may terminate the Settlement based on the ultimate award of attorneys' fees or expenses. *See* Stipulation ¶ 8.4; Order, at 9.

### d) The Parties' Standard Termination Agreement Is Fair

Third, Rule 23(e)(2)(C)(iv) requires the Court to consider the fairness of the proposed settlement in light of "any agreements required to be identified under Rule 23(e)(3)." The Parties have entered into a standard confidential agreement which provides that if Settlement Class Members opt-out to reach a certain number of shares, Defendants may terminate the Settlement. Stipulation ¶2.14. These "agreements are standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The

existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). There have been no exclusions to date. The Court was not troubled by this agreement at preliminary approval. Order, at 9.

*          *          *          *          *

Settlement Class Members stand to recover a significant proportion of the maximum damages they could win at trial, without incurring the risks, expenses, and delay inherent in prosecuting their claims to the very end. Not only is the Settlement entitled to a presumption of fairness, it is an excellent result on the merits.

## VII.   THE NOTICE TO THE CLASS SATISFIED ALL REQUIREMENTS

Before finally approving a settlement, a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). A notice program must provide the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974) (citing Fed. R. Civ. P. 23 (c)(2)).

At preliminary approval, the Court approved both the form of notice and the manner of its delivery. Plaintiffs followed the notice program. The Claims Administrator: (i) emailed the Long Notice and Claim Form, along with a link to the Claims Administrator's website, to all Settlement Class Members whose email addresses could be obtained with reasonable effort; or (ii) mailed the Postcard Notice by first-class mail to Settlement Class Members whose addresses could be obtained with reasonable effort. (SCS Decl. ¶¶3-11). The Claims Administrator also contacted brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities to email links of the Long Notice and Claim Form. (*Id.* ¶5).  The Claims Administrator posted copies of the Stipulation, the Preliminary Approval Order, the Long Notice, and Claim

Form on the Settlement Website (*id.* ¶14) and established a toll-free number to respond to Settlement Class Member inquiries. (*Id.* ¶13).  Additionally, the Claims Administrator caused the Summary Notice to be published in *Investor's Business Daily* and transmitted electronically twice over *GlobeNewswire*. (*Id.* ¶12).

This combination of individual first-class mail and/or email to all Class members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, transmitted over the newswire, and posted on the internet, was "the best notice practicable under the circumstances." Fed. R. Civ. P. 23 (c)(2)(B); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts.").

## VIII.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Rule 23(e)(2)(D) requires the Court to evaluate whether the settlement treats class members equitably relative to one another. The Third Circuit similarly requires that the Court find that the Plan of Allocation is fair, reasonable, and adequate. *In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. CIV.A. 08-CV-285DMC, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010).

"When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004). Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable."  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011).

It is appropriate to tier recoveries based on the strength of settlement class members' claims. *Careccio v. BMW of N. Am. LLC*, No. CIV. A. 08-2619, 2010 WL 1752347, at *6 (D.N.J.

Apr. 29, 2010); *Demmick v. Cellco P'ship*, No. CV 06-2163 (JLL), 2015 WL 13643682, at *13 (D.N.J. May 1, 2015). The Plan of Allocation calculates Settlement Class Members' initial recognized loss by measuring their damages using loss causation principles. Then, as discussed with the Court at the Preliminary Approval Hearing, the Plan of Allocations adjusts the recognized loss to account for the strength of their claims. Recognized losses for claims arising from purchases in the IPO are reduced by 90%. This reflects that under existing law, it is all but impossible to prove that shares purchased in an IPO are purchased in an efficient market unless there are unusual circumstances not present here (e.g., the spinoff of an asset from a public company). Plaintiffs acknowledged as much in the class certification briefing before the Settlement. (ECF No. 108 at 35 & n.16). Recognized losses for claims arising from purchases in the period between June 25, 2014, and March 16, 2016, are reduced by 50%. This reflects that the strongest part of Plaintiffs' case arises from Defendants' statements that XaraColl's FDA application was substantially complete, the first of which was made on March 17, 2016. In addition, March 17, 2016 roughly coincides with the portion of the Settlement Class Period during which the evidence of efficiency was stronger, namely that beginning December 10, 2015.

These reductions appropriately ensure that the strength of Settlement Class Members' claims will be a factor in calculating their share of the Settlement.

## IX.   CONCLUSION

For all of the foregoing reasons, the Court should finally approve the Settlement, finally approve the Plan of Allocation, finally certify the Class, and enter the proposed Final Judgment and Order of Dismissal with Prejudice, which Plaintiffs will file with their reply.

Dated: June 1, 2022                                Respectfully submitted,

                                                     **THE ROSEN LAW FIRM, P.A.**

                                                     */s/ Jacob A. Goldberg*
                                                     Jacob A. Goldberg
                                                     101 Greenwood Avenue, Suite 440
                                                     Jenkintown, PA 19046
                                                     Telephone: (215) 600-2817
                                                     Fax: (212) 202-3827
                                                     Email: jgoldberg@rosenlegal.com

                                                     Jonathan Horne (*pro hac vice*)
                                                     275 Madison Avenue, 40th floor
                                                     New York, NY 10016
                                                     Telephone: (212) 686-1060
                                                     Facsimile: (212) 202-3827
                                                     Email: jhorne@rosenlegal.com

                                                     *Lead Counsel for Lead Plaintiffs and the Proposed Settlement Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this on June 1, 2022, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg